**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

NATHANIEL GETZ,
EXECUTOR OF THE ESTATE OF
SUZANNE FOUNTAIN

         *Plaintiff*,

   v.

STURM, RUGER & COMPANY, INC.,

         *Defendant.*

Civil Action No.
3:23-cv-01338-RNC

**November 13, 2023**

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................1

BACKGROUND ...........................................................................2

    A.    Ruger Evaded Federal Regulation in Designing, Manufacturing, Marketing and Selling the "AR-556 Pistol." ............................................2

    B.    Plaintiff's Initial Complaint Alleged That Ruger's Conduct Was Intended to Evade Federal Firearm Regulations....................................3

ARGUMENT ...............................................................................4

I.    THE REMOVAL STATUTE IS STRICTLY CONSTRUED AND THE BURDEN IS ON DEFENDANT TO ESTABLISH THAT REMOVAL IS PROPER ...............................................................................4

II.    REMAND IS REQUIRED BECAUSE DEFENDANT'S NOTICE OF REMOVAL IS UNTIMELY UNDER 28 U.S.C. § 1446(b) .............................5

    A.    The Initial Complaint Implicated a Federal Question on Its Face, and Thus the Notice of Removal Is Untimely. .......................................6

    B.    The Law of the Case Doctrine Precludes Defendant's Attempt to Relitigate Its Objection to Plaintiff's Amended Complaint.....................8

III.    THIS CASE DOES NOT FIT WITHIN THE "SPECIAL AND SMALL" CATEGORY OF CASES REMOVABLE UNDER *GRABLE*........................10

    A.    Ruger's Alleged Violations Of The National Firearms Act and The Gun Control Act Do Not Present a Sufficiently "Substantial" Federal Issue................11

        1.    The Federal Issue Here is Fact-Bound and Not "A Nearly Pure Issue of Law." ........................................................11

        2.    The Federal Issue Raised by Plaintiff's Claims Is Not Sufficiently Important to the Federal System as a Whole. ..........................15

    B.    Exercising Federal Jurisdiction Would Disrupt The Federal-State Balance. ........19

    C.    The *Fleet Farm* and *Arm or Ally* Cases Do Not Support Removal Here. ............20

CONCLUSION.............................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbo-Bradley v. City of Niagara Falls,*
  73 F.4th 143 (2d Cir. 2023) ..................................................................................6

*Ali v. Mukasey,*
  529 F.3d 478 (2d Cir. 2008)...................................................................................8

*Barone v. Bausch & Lomb, Inc.,*
  372 F. Supp. 3d 141 (W.D.N.Y. 2019)..................................................................16

*Broder v. Cablevision Systems Corp.,*
  418 F.3d 187 (2d Cir. 2005)..................................................................................16

*Cenatiempo v. Bank of Am., N.A.,*
  333 Conn. 769 (Conn. 2019).................................................................................19

*Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.,*
  557 Fed. Appx. 87 (2d Cir. 2014).........................................................................11

*Corporan v. Wal-Mart Stores E., LP,*
  194 F. Supp. 3d 1128 (D. Kan. 2016).......................................................14, 18, 20

*Cutillo v. Wellmore Behav. Health,*
  No. 3:15-CV-01174 (VAB), 2016 WL 3976543 (D. Conn. July 22, 2016) ...........19

*DeWeerth v. Baldinger,*
  38 F.3d 1266 (2d Cir. 1994)...................................................................................8

*Empire Healthchoice Assurance v. McVeigh,*
  547 U.S. 677 (2006)...........................................................................11, 12, 15, 19

*Erie Conduit Corp. v. Metro. Asphalt Paving Ass'n,*
  560 F. Supp. 305 (E.D.N.Y. 1983) .......................................................................10

*Fed. Ins. Co. v. Tyco Int'l Ltd.,*
  422 F.Supp.2d 357 (S.D.N.Y. 2006) ......................................................................5

*Fracasse v. People's United Bank,*
  747 F.3d 141 (2d Cir. 2014).............................................................................11, 15

*Franco v. Bunyard,*
  261 Ark. 144 (Ark. 1977) (en banc) .....................................................................18

*In re Fugazy Express, Inc.*,
    159 B.R. 432 (Bankr. S.D.N.Y. 1993)......................................................................................10

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005)............................................................................................... *passim*

*Gunn v. Minton*,
    568 U.S. 251 (2013)............................................................................................... *passim*

*Jefferson v. Rossi*,
    No. 01-CV-2536, 2002 WL 32154285 (E.D. Pa. Jan. 22, 2002)...........................................18

*K-Mart Enters. of Fla., Inc. v. Keller*,
    439 So. 2d 283 (Fla. Dist. Ct. App. 1983) ..........................................................................19

*Kalina v. Kmart Corp.*,
    No. CV-90-269920 ...........................................................................................................19

*Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*,
    397 F.3d 77 (2d Cir. 2005)...................................................................................................8

*Lupo v. Hum. Affs. Int'l, Inc.*,
    28 F.3d 269 (2d Cir.1994) ...................................................................................................5

*Martin v. Schroeder*,
    209 Ariz. 531 (Ariz. Ct. App. 2005) ...................................................................................19

*Merrell Dow Pharms., Inc. v. Thompson*,
    478 U.S. 894 (1986) ............................................................................................15, 17, 18

*MHA LLC v. HealthFirst, Inc.*,
    629 F. App'x 409 (3d Cir. 2015) .......................................................................................15

*Mihok v. Medtronic, Inc.*,
    119 F. Supp. 3d 22 (D. Conn. 2015).................................................................... *passim*

*Minnesota v. Fleet Farm LLC*,
    No. CV 22-2694, 2023 WL 4203088 (D. Minn. June 27, 2023).....................................20, 22

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010. (2d Cir. 2014)............................................................................................16

*Nasso v. Seagal*,
    263 F.Supp.2d 596 (E.D.N.Y. 2003) ..................................................................................10

*Nettelton v. Astrue*,
    No. 3:11-cv-1357, 2013 WL 1390042 (D. Conn. Apr. 4, 2013) ............................................8

*New York v. Arm or Ally, LLC*,
    644 F. Supp. 3d. 70 (S.D.N.Y. 2022) ...........................................................................21, 22

*Peek v. Oshman's Sporting Goods, Inc.*,
    768 S.W.2d 841 (Tex. Ct. App. 1989) ...................................................................................19

*Phx. Glob. Ventures, LLC v. Phx. Hotel Assocs., Ltd.*,
    422 F.3d 72 (2d Cir. 2005)........................................................................................................5

*Pritika v. Moore*,
    91 F. Supp. 3d 553 (S.D.N.Y. 2015) .....................................................................................15

*Ramos v. Wal-Mart Stores, Inc.*,
    202 F. Supp. 3d 457 (E.D. Pa. 2016) .....................................................................................20

*Roberts v. Smith & Wesson Brands, Inc.*,
    No. 22-CV-6169, 2023 WL 6213654 (N.D. Ill. Sept. 25, 2023) .............................................20

*Sig Sauer, Inc. v. Brandon*,
    826 F.3d 598 (1st Cir. 2016) .................................................................................................13

*Smith v. Kan. City Title & Tr. Co.*,
    255 U.S. 180 (1921)..............................................................................................................16

*Soto v. Bushmaster Firearms Int'l, LLC*,
    139 F. Supp. 3d 560 (D. Conn. 2015).......................................................................................5

*Spencer v. Duncaster, Inc.*,
    54 F. Supp. 3d 171 (D. Conn. 2014)..........................................................................................4

*In re Standard & Poor's Rating Agency Litig.*,
    23 F.Supp.3d 378 (S.D.N.Y. 2014) ........................................................................................13

*Tisdale v. Pagourtzis*,
    No. 3:20-CV-140, 2020 WL 7170491 (S.D. Tex. Dec. 7, 2020)......................................18, 20

*Torah Soft Ltd. v. Drosnin*,
    224 F.Supp.2d 704 (S.D.N.Y. 2002) ........................................................................................9

*Vermande v. Hyundai Motor Am., Inc.*,
    352 F.Supp.2d 195 (D. Conn. 2004)..........................................................................................5

*Walker v. Doe*,
    No. 3:17-cv-425, 2018 WL 4516672 (D. Conn. Sept. 20, 2018).............................................8

*West v. Mache of Cochran, Inc.*,
    187 Ga. App. 365 (Ga. Ct. App. 1988) ..................................................................................19

*Whitaker v. Am. Telecasting, Inc.*,
　261 F.3d 196 (2d Cir. 2001) ................................................................6, 7

*Williams ex rel. Raymond v. Wal-Mart Stores E., L.P.*,
　99 So. 3d 112 (Miss. 2012) ...................................................................18

*Zhaoyin Wang v. Beta Pharma, Inc.*,
　No. 3:14-CV-01790 (VLB), 2015 WL 5010713 (D. Conn. Aug. 24, 2015) ............................5

**Statutes**

18 U.S.C. §§ 921–931 ................................................................... *passim*

26 U.S.C. §§ 5801–5872 ..............................................................7, 9, 12, 14, 21

26 U.S.C. § 6335 .........................................................................16

28 U.S.C. § 1331 ........................................................................1, 10

28 U.S.C. § 1446 .......................................................................1, 4, 5

28 U.S.C. § 1447 .........................................................................22

**Other Authorities**

88 Fed. Reg. 6,478 (Jan. 31, 2023) ...........................................................17

**PRELIMINARY STATEMENT**

Defendant Sturm, Ruger & Company, Inc.'s ("Ruger") Notice of Removal is defective for two principal reasons. First, it is untimely. Ruger invokes this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. ECF No. 1 ("Notice") ¶ 6. Plaintiff does not contest that his state law claims raise a disputed federal issue—namely, whether the gun manufactured, marketed, and sold by Ruger and used by a shooter to kill Suzanne Fountain was a short-barreled rifle within the meaning of the federal National Firearms Act and Gun Control Act. But this disputed federal issue was apparent from the face of Plaintiff's initial complaint, dated March 10, 2023, and served on Ruger on March 13, 2023. Ruger failed to file its Notice of Removal within 30 days of receiving that initial pleading, as required by 28 U.S.C. § 1446.

Second, even if Ruger's Notice were timely, Ruger cannot meet its burden to establish this Court's federal question jurisdiction. Plaintiff has asserted solely state-law claims: negligence, negligence per se, public nuisance, common law recklessness, and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Thus, to establish the Court's subject matter jurisdiction, Ruger must demonstrate that this case fits within the "special and small" category of state law claims that "implicate significant federal issues." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This Ruger cannot do. The federal issue disputed by the parties is almost entirely a question of fact; its resolution will involve a fact-intensive inquiry into the Ruger weapon's specific features and Ruger's intent in designing it. The Supreme Court has made clear that where a disputed federal issue is fact-bound and situation-specific, and would not have broad implications for the enforcement of federal law, the issue is simply not substantial enough to warrant federal court jurisdiction over state law claims. That is the case here. Additionally, Ruger cannot establish that Plaintiff's claims are "capable of resolution in federal court without disrupting the federal-state

balance approved by Congress." *Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d 22, 27 (D. Conn. 2015) (quoting *Gunn*, 568 U.S. at 258).

Therefore, for the reasons outlined herein, Plaintiff respectfully requests that the Court remand this matter to the Connecticut Superior Court.

## BACKGROUND

### A.   Ruger Evaded Federal Regulation in Designing, Manufacturing, Marketing and Selling the "AR-556 Pistol."

Mr. Getz is the son of Suzanne Fountain, one of the victims of the March 22, 2021, mass shooting at a King Soopers supermarket in Boulder, Colorado. A 21-year-old shooter killed Ms. Fountain and nine other people in a matter of minutes with a short-barreled rifle that Mr. Getz alleges was unlawfully designed, manufactured, marketed, and sold by Connecticut-based Ruger. The shooter had purchased the short-barreled rifle a mere six days earlier, on March 16, 2021. Amended Complaint ("Am. Compl.") ¶¶ 18–19, 99, attached as Exhibit B to Ruger's Notice of Removal (ECF No. 1-3).

Federal law—specifically, the National Firearms Act (the "NFA") and the Gun Control Act ("GCA")—imposes heightened regulation on manufacturers, sellers, and purchasers of short-barreled rifles, over and above the baseline federal regulation of all firearms. Am. Compl. ¶¶ 39–53. Rigorous oversight is commensurate with the elevated danger presented by short-barreled rifles. The Ruger weapon at issue here, for instance, resembles full-length AR-15-style rifles in function and firepower, but offers greater concealability and maneuverability due to its shorter barrel. Am. Compl. ¶¶ 32–33, 43; *see also* Initial Compl.[1] ¶¶ 9–12, attached as Exhibit A to Ruger's

---

[1]   For the sake of clarity, this memorandum refers to the Complaint dated March 10, 2023, commencing this action in Connecticut state court as the "Initial Complaint." Following Ruger's Request to Revise and the court's associated order, Plaintiff made minor revisions—which are immaterial to the instant motion—and filed the pleading styled as the "Revised Complaint" on

Notice of Removal (ECF No. 1-2). Notably, prospective civilian retail purchasers must complete a multi-step application process and receive approval from the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") before buying a short-barreled rifle, a process that takes approximately seven months to complete. Am. Compl. ¶¶ 52–53.

As alleged by Plaintiff in both the Initial Complaint and his Amended Complaint, Ruger evaded increased regulatory obligations imposed by federal law by designing, marketing, and selling short-barreled rifles with alternative shoulder stocks and under the misleading model name "AR-556 Pistol."[2] Am. Compl. ¶¶ 5–13, 16, 21, 56–82; Initial Compl. ¶¶ 6, 8–15. Had Ruger complied with federal law, the shooter would not have been able to purchase the weapon he used in time to commit this horrific mass shooting and, as a result, Ruger's conduct was a proximate cause of the death and related injuries of Suzanne Fountain (and many others). Am. Compl. ¶¶ 109, 148–152; *see also* Initial Compl. ¶¶ 40–44.

**B.     Plaintiff's Initial Complaint Alleged That Ruger's Conduct Was Intended to Evade Federal Firearm Regulations.**

Plaintiff filed the Initial Complaint, dated March 10, 2023, in the Connecticut Superior Court, District of Waterbury (the "Connecticut State Court"). The Initial Complaint included two intertwined sets of fact allegations: (a) Ruger evaded federal regulation of short-barreled rifles in designing, producing, and distributing its line of civilian short-barreled rifles, which it misleadingly labeled as AR-556 "Pistols," and (b) Ruger unfairly, deceptively, unscrupulously, and recklessly marketed the same. Plaintiff then filed a request to amend his complaint. The Amended Complaint significantly expanded on the allegations made in the Initial Complaint (and

---

July 7, 2023, attached hereto as Exhibit 1. The Revised Complaint was the operative pleading until the court granted Plaintiff's Request to Amend on October 4, 2023.

[2]     For ease of reference, Plaintiff refers to the weapon at issue throughout by the model name assigned to it by Ruger, "AR-556 Pistol." But as Plaintiff has alleged in each version of his complaint, and as discussed herein, the weapon is in fact a short-barreled rifle.

the subsequent Revised Complaint) relating to Ruger's evasion of federal law. Whereas the Initial Complaint placed greater emphasis on Ruger's marketing conduct, the Amended Complaint expanded on the allegations relating to the ways in which Ruger circumvented federal regulation of short-barreled rifles. But neither the evasion theory nor the marketing theory was brand new or abandoned in the Amended Complaint, despite Ruger's assertions to the contrary. *See* Notice of Removal ("Notice") ¶ 3.

Ruger filed an objection to Plaintiff's request to amend his complaint on the sole ground that Plaintiff's new allegations did not relate back to the Initial Complaint and were time-barred. Plaintiff filed a response to Defendant's objection. Judge Bellis of the Connecticut Superior Court entered an order on October 4, 2023 (the "Order"), denying Ruger's objection and granting Plaintiff's request to amend his complaint. *See* Order, attached hereto as Exhibit 4. On October 13, 2023, Ruger filed the Notice of Removal, removing the action to this Court.

## ARGUMENT

## I.   THE REMOVAL STATUTE IS STRICTLY CONSTRUED AND THE BURDEN IS ON DEFENDANT TO ESTABLISH THAT REMOVAL IS PROPER

Pursuant to 28 U.S.C. § 1446(b), "[t]he notice of removal of a civil action or proceeding ***shall be*** filed within [thirty] days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." (emphasis added). If the case stated in the initial pleading is not removable, a defendant may file a notice of removal within thirty days after receipt of an amended pleading, motion, order or other paper indicating, for the first time, that the case has become removable. 28 U.S.C. § 1446(b)(3). The 30-day window for removal contained in Section 1446(b) is "mandatory" and "rigorously enforced" by courts, absent a finding of waiver or estoppel. *Spencer v. Duncaster, Inc.*, 54 F. Supp. 3d 171, 174 (D. Conn. 2014) ("[T]he removal statute, like other jurisdictional

statutes, is to be strictly construed."); *see also Phx. Glob. Ventures, LLC v. Phx. Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005).

In considering a motion to remand, "it is well-established that courts 'treat all factual allegations in the Complaint as true.'" *Zhaoyin Wang v. Beta Pharma, Inc.*, No. 3:14-CV-01790 (VLB), 2015 WL 5010713, at *1 (D. Conn. Aug. 24, 2015) (quotation omitted); *see also Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 391 (S.D.N.Y. 2006) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."). And "[the Second Circuit has repeatedly cautioned that in light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, *resolving any doubts **against removability***." *Vermande v. Hyundai Motor Am., Inc.*, 352 F.Supp.2d 195, 197 (D. Conn. 2004) (quoting *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir.1994)) (emphasis added); *see also Soto v. Bushmaster Firearms Int'l, LLC*, 139 F. Supp. 3d 560, 562 (D. Conn. 2015) (Chatigny, J.) ("Any doubts must be resolved in favor of remand."). As the party seeking to remove this case, Defendant has "the burden of establishing that federal jurisdiction exists, and the burden is a heavy one." *Id.* Defendant cannot meet this burden.

## II.     REMAND IS REQUIRED BECAUSE DEFENDANT'S NOTICE OF REMOVAL IS UNTIMELY UNDER 28 U.S.C. § 1446(b)

There can be no dispute that Ruger filed its Notice of Removal well over 30 days after Plaintiff served his Initial Complaint on March 13, 2023. Instead, Ruger attempts to get this action into federal court several months past the prescribed deadline by arguing—wrongly—that Plaintiff raised federal questions for the first time in his Amended Complaint on October 4, 2023. Notice ¶ 3. Ruger's attempt should be denied for at least two reasons.

*First*, remand is required because the federal question identified in Ruger's Notice of Removal was clear on the face of Plaintiff's Initial Complaint and the Notice of Removal is thus time-barred. *Second*, this exact issue was fully briefed by the parties and decided by the Connecticut Superior Court. That court rejected Ruger's argument that Plaintiff's allegations related to federal firearm statutes were "new" and allowed Plaintiff to amend his complaint. *See* Exhibit 4, Order. Unhappy with the state court decision, Ruger now looks to this Court for a second bite at the apple. The Court should thus apply the law of the case doctrine, or otherwise defer to Judge Bellis's Order, and reject Defendant's Notice of Removal as untimely.

### A.    The Initial Complaint Implicated a Federal Question on Its Face, and Thus the Notice of Removal Is Untimely.

A case is removable when the initial pleading "enables the defendant to 'intelligently ascertain' removability from the face of such pleading." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205–06 (2d Cir. 2001); *see also Abbo-Bradley v. City of Niagara Falls*, 73 F.4th 143, 150 (2d Cir. 2023) (affirming remand where changed facts in amended complaint did not affect whether federal jurisdiction could properly be asserted).

Defendant argues that this case first became removable only after Plaintiff filed his Amended Complaint, Notice ¶ 3, but Plaintiff's Initial Complaint unambiguously implicated federal questions on its face. Specifically, the Initial Complaint included several allegations that, read together, made clear that Ruger's evasion of federal regulation of short-barreled rifles has been part of Plaintiff's claim under the Connecticut Unfair Trade Practices Act (CUTPA) from the beginning. Specifically, Plaintiff alleged that "[t]he AR-556 pistol variant [of the full-length AR-556 rifle] featured the same rail system as other AR-15 style rifles while having an altered barrel and stock to ***evade federal classification as a rifle***," Initial Compl. ¶ 10; "Ruger designed the AR-556 such that it would utilize the same ammunition and magazines as the AR-15s," *id.* ¶ 11; and

- 6 -

"Ruger designed the AR-556 to be sold with stabilizing braces that essentially allowed the weapon to be ***converted to a rifle while still preserving its classification as a pistol for regulatory purposes***, *id.* ¶ 13.[3] Plaintiff's CUTPA claim has, from the start, encompassed these allegations. *See* Initial Compl. ¶ 37 (CUTPA claim alleging that "Ruger marketed in the above manner," which included marketing the AR-556 as a pistol in order to evade federal classification as a rifle). This was sufficient to put Ruger on notice that Plaintiff's Initial Complaint implicated questions of federal law.

Ruger argues that Plaintiff alleged "for the first time" in his Amended Complaint "that Ruger's sale of the firearm violated both the National Firearms Act of 1934, 26 U.S.C. §§ 5801–5872 ("NFA"), and the Gun Control Act of 1968, 18 U.S.C. §§ 921–931 ("GCA")." Notice ¶ 3. But this improperly elevates form over substance. While it is true that Plaintiff did not expressly name the NFA or the GCA in his Initial Complaint, he alleged that Ruger's misconduct was intended to "***evade federal classification as a rifle***" and that Ruger "designed the AR-556 to be sold with stabilizing braces that essentially allowed the weapon to be ***converted to a rifle while still preserving its classification as a pistol for regulatory purposes***."  Together, these allegations clearly enabled Ruger, a sophisticated gun company, to "'intelligently ascertain'" (*Whitaker*, 261 F.3d at 205–06) that Plaintiff was alleging evasion of federal laws governing short-barreled rifles. By identifying the statutes in his Amended Complaint, Plaintiff simply provided additional specificity as to his allegations; the federal questions underlying Plaintiff's Initial Complaint did not change. Indeed, Defendant acknowledges as much in its formulation of the federal question at issue: "The federal question embedded in each of Plaintiff's claims is what is a 'handgun' and

---

[3]     Relatedly, Plaintiff's Initial Complaint also alleged: "Ruger's marketing and sale of the AR-556 pistol with stabilizing arm braces allowed its weapon to function as a stock-stabilized AR-15 rifle, while evading regulations targeted at limiting AR-15-style rifles**,**" *id.* ¶ 15.

what is a 'short-barreled rifle' subject to heightened restrictions and limited access under federal law." *Id.* ¶ 9. As detailed above, that question was raised and alleged in Plaintiff's Initial Complaint. It was thus readily ascertainable on the face of the Initial Complaint that Plaintiff's claim would require adjudication of whether Ruger designed the short-barreled AR-556 to evade federal classification as a rifle.

### B.     The Law of the Case Doctrine Precludes Defendant's Attempt to Relitigate Its Objection to Plaintiff's Amended Complaint.

Because this issue was resolved in full by the state court, this Court need not even reconsider the state court's prior ruling and should instead apply the law of the case doctrine. The law of the case doctrine counsels a court against revisiting prior rulings in subsequent stages of the same case absent "compelling reasons" that are not present here, such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008); *see also Walker v. Doe*, No. 3:17-cv-425, 2018 WL 4516672, at *4 (D. Conn. Sept. 20, 2018) ("Although not binding, the law of the case doctrine provides that a court should adhere to its earlier decisions in later stages of litigation unless compelling reasons counsel otherwise."). Although discretionary, courts are "reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005).

The law of the case doctrine has been applied broadly "to all matters decided by necessary implication as well as those addressed directly." *Nettelton v. Astrue*, No. 3:11-cv-1357, 2013 WL 1390042, at *2 (D. Conn. Apr. 4, 2013); *see also DeWeerth v. Baldinger*, 38 F.3d 1266, 1271 (2d Cir. 1994) (doctrine "applies to issues that have been decided either expressly or by necessary implication"). The doctrine applies equally to state court decisions made prior to removal to federal

court.  *See Torah Soft Ltd. v. Drosnin*, 224 F.Supp.2d 704, 710 (S.D.N.Y. 2002) ("The law of the case doctrine generally applies to decisions made by a state court prior to removal to federal district court.").

Here, the state court has already ruled that the allegations in Plaintiff's Amended Complaint relate back to the allegations in his Initial Complaint, and by extension, that Ruger was on notice that Plaintiff's Initial Complaint implicated questions of federal law. Through its Notice of Removal, Defendant effectively ignores its prior objection to Plaintiff's Amended Complaint, and the state court's Order rejecting it, and asks this Court to decide the same issue again, this time in its favor. The Court should not do so.

Ruger raised a single objection to Plaintiff's request to amend his complaint—that the proposed amendments contain new causes of action that do not relate back to the Initial Complaint and are therefore time-barred. *See* Exhibit 3, Pl.'s Response to Obj. to Am. Compl. Specifically, Ruger argued that Plaintiff "abandoned" his "marketing cause of action" in favor of "an entirely new cause of action based on the firearm's design, which [he] claim[s] violates both the Gun Control Act, 18 U.S.C. §§ 921–931, and the National Firearms Act, 26 U.S.C. §§ 5801–5872." Exhibit 2, Objection to Am. Compl. at 3; *see also id.* at 6 (arguing Plaintiff's allegations that Ruger violated the National Firearms Act and the Gun Control Act "have no relevance to, nor bearing on" Plaintiff's Initial Complaint). This was a blatant mischaracterization of both Plaintiff's Initial Complaint and his Amended Complaint. Indeed, far from abandoning his marketing claim, Plaintiff's Amended Complaint maintains and expands his allegations with respect to Ruger's unlawful marketing. *See, e.g.*, Am. Compl. ¶¶ 22, 34, 112–13, 123. Likewise, the Initial Complaint alleged that Ruger designed, produced, and sold the AR-556 Pistol in a manner intended to evade

federal regulations relating to classification of firearms as rifles or pistols. *See, e.g.*, Initial Compl. ¶¶ 10, 15.

In order to rule on Ruger's objection to Plaintiff's amendments, the state court necessarily had to decide whether Plaintiff's Amended Complaint did in fact raise such claims implicating federal law for the first time. By permitting Plaintiff to amend his complaint, that court necessarily concluded that the expanded allegations regarding federal firearm law violations in Plaintiff's Amended Complaint related back to the Initial Complaint and were not raised for the first time in the Amended Complaint. That the court did not issue a written opinion with its order makes no difference. *See In re Fugazy Express, Inc.*, 159 B.R. 432, 438 (Bankr. S.D.N.Y. 1993) (argument that decision issued without opinion did not constitute law of the case was "contrary to well settled authority in this circuit"); *Erie Conduit Corp. v. Metro. Asphalt Paving Ass'n*, 560 F. Supp. 305, 307 n.2 (E.D.N.Y. 1983) (applying law of the case doctrine to decisions issued without written opinions). Thus, this Court should apply the law of the case doctrine and defer to that court's order. *See Nasso v. Seagal*, 263 F.Supp.2d 596, 608 (E.D.N.Y. 2003) ("Upon removal, the orders entered by the state court are treated as though they had been entered by the federal court.")

## III. THIS CASE DOES NOT FIT WITHIN THE "SPECIAL AND SMALL" CATEGORY OF CASES REMOVABLE UNDER *GRABLE*

Even if Ruger's Notice of Removal were timely filed, which it was not, Ruger cannot establish this Court's federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331. Ruger does not claim that this case features a federal cause of action. Plaintiff has brought solely state-law claims: negligence, negligence per se, public nuisance, common law recklessness, and a violation of CUTPA. *See* Am. Compl. ¶¶ 110–147. Instead, Ruger invokes the *Grable* doctrine, which recognizes that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312; *see* Notice ¶¶ 11–12. The

Supreme Court has found that only a "special and small" number of cases fall within this doctrine. *Gunn*, 568 U.S. at 258; *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (quoting *Gunn* and describing federal question jurisdiction pursuant to the *Grable* doctrine as the "'extremely rare exception'").

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Mihok*, 119 F. Supp. 3d at 27 (quoting *Gunn*, 568 U.S. at 258) (hereinafter "*Grable* factors"). This is a conjunctive test and thus all four factors must be met. *See Gunn*, 568 U.S. at 258. Plaintiff acknowledges that his claims necessarily raise a federal issue that is actually disputed. But Ruger cannot establish the third or fourth *Grable* factor, and each of those failures is independently sufficient to establish that federal question jurisdiction does not lie.

### A.     Ruger's Alleged Violations Of The National Firearms Act and The Gun Control Act Do Not Present a Sufficiently "Substantial" Federal Issue.

#### 1.     The Federal Issue Here is Fact-Bound and Not "A Nearly Pure Issue of Law."

In order to qualify as sufficiently "substantial," the Supreme Court has made clear that a federal issue necessarily raised by a state law claim must be "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases," rather than one that is "fact-bound and situation-specific." *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 700–01 (2006) (citation omitted). *See, e.g., Congregation Machna Shalva Zichron Zvi Dovid v. U.S. Dep't of Agric.*, 557 Fed. Appx. 87, 90 (2d Cir. 2014) (affirming district court's refusal to exercise federal jurisdiction over a New York state law claim because "the determination at issue here is a fact-specific application of [federal] regulations to [plaintiff] that does not implicate the validity of the regulations themselves, or have any other broader effect on federal

interests"); *Mihok*, 119 F. Supp. 3d at 31 (remanding case because, among other reasons, "the court's analysis of the FDA regulations will take the form of a highly 'fact-specific application' of the regulations to Medtronic's conduct that is unlikely to substantially impact the federal system").

Here, Plaintiff does not dispute that his state law claims implicate Ruger's alleged noncompliance with the federal NFA and GCA. But that issue is not one of pure law; quite the contrary, it is largely and almost entirely a series of factual questions that will require the application of federal standards to the specific facts of this case. Under *Empire Healthchoice* and its progeny, this is dispositive on the *Grable* "substantiality" factor and requires remand.

More specifically, Plaintiff alleges that Ruger unlawfully manufactured and distributed a short-barreled rifle that was ultimately used by the shooter to kill Suzanne Fountain. *See, e.g.*, Am. Compl. ¶¶ 93–109. No party disputes the *legal* question of whether the NFA (and GCA) govern the manufacture and sale of short-barreled rifles. The parties instead dispute the *factual* question of whether the shooter's AR-556 Pistol, equipped by Ruger with an SBA3 stabilizing brace, met the NFA's and GCA's parallel statutory definitions of short-barreled rifles. *See* 26 U.S.C. § 5845(a)(3)–(4), (c) (NFA definition of short-barrel rifle); 18 U.S.C. § 921(a)(7)–(8) (GCA definition of short-barrel rifle); Am. Compl. ¶¶ 44–46 (outlining the NFA and GCA definitions); Notice ¶ 15. The factfinder in this case thus will be required to determine whether the weapon at issue met the enumerated statutory elements—that is, whether Ruger's AR-556 Pistols equipped with SBA3 braces: (a) have rifled bores, through which one round of ammunition will be fired for each trigger pull; (b) have a barrel length of less than 16 inches; and (c) were "designed or redesigned," (d) "made or remade," and (e) "intended" by Ruger "to be fired from the shoulder." 26 U.S.C. § 5845(a)(3)–(4), (c); 18 U.S.C. § 921(a)(7)–(8); Am. Compl. ¶¶ 44–46. These five inquiries are all factual, not legal, questions, to be decided by a trier of fact. *See* Am. Compl. ¶¶

54–92 (alleging facts specific to Ruger and its AR-556 Pistols to establish that they are short-barreled rifles); *cf. Sig Sauer, Inc. v. Brandon*, 826 F.3d 598 (1st Cir. 2016) (engaging in fact-intensive review of the ATF's classification of a silencer under a similar NFA standard).

Stated differently, deciding whether the weapon was a short-barreled rifle under federal law will involve factual questions such as: whether the SBA3 stabilizing brace is functionally a shoulder stock and whether the specific design features of Ruger's AR-556 Pistol—including, but not limited to, its weight, the distance between its trigger and the rear of the SBA3 brace, and the method by which the SBA3 brace attaches to the back of the gun—indicate that Ruger designed and intended the gun be fired with two hands while braced against the shoulder, as a rifle. Am. Compl. ¶¶ 72, 75. And Plaintiff's proof on this point is likely to rely heavily on *factual* information obtained in discovery and introduced through expert testimony. Intent, for instance, is an issue of fact, and documents, communications, and testimony obtained from Ruger will shed significant light on whether Ruger intended (and designed) the AR-556 Pistol to be fired from the shoulder.

*Mihok v. Medtronic, Inc.* is instructive. There, "the Complaint allege[d] that the Defendants violated the Connecticut Products Liability Act by (or as evidenced by) manufacturing, marketing, selling or implanting a device placed into the stream of commerce without complying with the applicable FDA regulations." 119 F. Supp. 3d at 26. The court granted the plaintiff's remand motion, finding that the federal question raised was not "substantial" enough to support federal jurisdiction. *Id.* at 39. "That the application of the [FDA] regulations may require a state court to 'grapple with federal law' and perform 'an individualized assessment of both the scope of the [federal regulation] at issue and the particular conduct alleged to fall within (or without) that [regulation]' is not alone sufficient to 'warrant federal jurisdiction.'" *Id.* at 31 (quoting *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 398 (S.D.N.Y. 2014) (granting

motion to remand)). The *Mihok* court explained that its "analysis of the FDA regulations will take the form of a highly 'fact-specific application' of the regulations to Medtronic's conduct that is unlikely to substantially impact the federal system." *Id.* A similar fact-intensive inquiry is required here with regard to the application of the federal standard for short-barreled rifles. *See also Corporan v. Wal-Mart Stores E., LP*, 194 F. Supp. 3d 1128, 1132–34 (D. Kan. 2016) (ordering remand of case against Wal-Mart arising from alleged violation of the Gun Control Act and stating: "[E]ven if defendants' alleged violation of the Gun Control Act were deemed a necessary element to plaintiffs' [state negligence per se] claim … the federal issue is not sufficiently substantial. … [The] petition reveals a fact-bound, private dispute between parties with no direct interest by the United States," and "[i]n such circumstances, the exercise of federal question jurisdiction is not appropriate.").

Contrary to Ruger's suggestion (Notice ¶ 17), the application of the NFA and GCA statutory standard for short-barreled rifles to Ruger and its AR-556 pistols will not result in a legal rule that can be applied wholesale by other courts applying the same federal standards to different weapons or different manufacturers. Instead, it is a weapon-by-weapon and company-by-company inquiry. Whether Ruger "designed or redesigned, made or remade, and intended" the AR-556 Pistols to be fired from the shoulder (26 U.S.C. § 5845(c)) is an individualized question of fact; a jury's determination in this case, with regard to this specific weapon, would not control another jury (much less any federal regulator or prosecutor) considering another weapon in a different case.  As for other individuals who own AR-556 Pistols, nothing a fact-finder determines in this case would bind or otherwise interfere with any federal enforcement of existing federal law.

Here, simply put, Plaintiff's claims do not present a "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases." *Empire*

*Healthchoice*, 547 U.S. at 700.  For that reason, *Grable's* "substantiality" prong cannot be met, and the Court need go no further in remanding this case to state court.

2.     **The Federal Issue Raised by Plaintiff's Claims Is Not Sufficiently Important to the Federal System as a Whole.**

Ruger's removal further falters on the third *Grable* prong because "the 'substantiality inquiry ... looks [] to the importance of the issue to the federal system as a whole.'" *Fracasse*, 747 F.3d at 144 (quoting *Gunn*, 568 U.S. at 260). Notably "[i]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *Gunn*, 568 U.S. at 260. Nor, as both *Merrell Dow* and *Gunn* demonstrate, is it the case that any federal issue involved in a complex regulatory scheme is substantial enough for federal question jurisdiction under *Grable. See Gunn,* 568 U.S. at 252, 259–60 (finding federal patent question necessary and actually disputed but not within the jurisdiction of the federal court because "the federal issue does not carry the necessary significance"); *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 806–07 (1986) (finding no federal jurisdiction for negligence claims based on mislabeling in violation of the Federal Food Drug and Cosmetic Act); *see also Pritika v. Moore*, 91 F. Supp. 3d 553, 559 (S.D.N.Y. 2015) (granting remand on the *Grable* substantiality prong "[a]lthough Avon's compliance with the FCPA [Foreign Corrupt Practices Act] will be one of the critical issues in this litigation"); *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 414 (3d Cir. 2015) (rejecting argument that claim based on Medicare reimbursements under the Medicare Act raised substantial federal question: "A state court is the appropriate forum for this 'fact-bound and situation-specific' case involving the application of Medicaid and Medicare laws").[4]

---

[4]     Ruger incorrectly cites *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), for the proposition that "federal issues are substantial when they involve complex federal regulatory schemes." Notice ¶ 16. The idea that mere involvement in a complex regulatory

Moreover, this case lacks indicia of federal importance of the kind that courts have considered relevant in determining that a federal question supports federal jurisdiction. While none of these elements are strictly required for subject matter jurisdiction, their absence in this case is telling.

First, unlike the leading cases in which the Supreme Court has found *Grable*'s substantiality prong to be satisfied, Plaintiff's claims here do not implicate the validity of the NFA, the GCA, their implementing regulations, or any enforcement or other action by the federal government. *See Grable*, 545 U.S. at 315 (federal question jurisdiction appropriate where the "meaning of [26 U.S.C. § 6335]" and whether the Internal Revenue Service had complied with it "appears to be the only legal or factual issue contested in the case"); *Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 201 (1921) (finding federal question jurisdiction where a bank questioned "the constitutional validity of an act of Congress" in the course of arguing that the government bonds it had purchased were unconstitutionally issued).

As noted above, the outcome of Plaintiff's case will not affect the federal government's power to regulate weapons subject to the NFA. *See* Am. Compl. ¶¶ 47–53, 87 (describing part of the ATF's existing scheme for regulating weapons subject to the NFA). Ruger points to a rule promulgated by the ATF earlier this year to clarify the NFA's statutory definition of short-barreled

---

scheme is sufficient for federal question jurisdiction is outdated in the wake of the Supreme Court's 2016 decision in *Gunn*, and courts in this Circuit have recognized as much. *See Mihok*, 119 F. Supp. 3d at 33, n.6 (distinguishing *Broder* and noting: "Moreover, as has been pointed out by other courts, *Broder* was decided without the benefit of *Gunn*, which clarified the substantiality prong of the *Gunn–Grable* test"); *Barone v. Bausch & Lomb, Inc.*, 372 F. Supp. 3d 141, 154 (W.D.N.Y. 2019) (describing reliance on *Broder* as "inapposite, outdated, and otherwise unpersuasive" in light of *Gunn*). The Second Circuit itself has clarified, post-*Broder*, that the fact that a claim may concern a federal issue "does not necessarily render every federal question pertaining thereto sufficiently substantial." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1025. (2d Cir. 2014).

rifles as evidence of the "need for a uniform interpretation and application" of federal firearms law. Notice ¶ 16 n.1 (referencing 88 Fed. Reg. 6,478 (Jan. 31, 2023)). But remanding Plaintiff's claims to state court will not undermine any such need or implementation of the new rule (which in any event is tied up in legal challenges, as Ruger concedes). Resolution by the finder of fact of the federal issue raised by Plaintiff's claims will not create a legal rule that controls the resolution of other hypothetical future cases. Nor will resolution of Plaintiff's state law claims by the state courts alter the federal government's power and discretion to federally regulate or prosecute (or not) individuals who unlawfully possess short-barreled rifles in violation of the NFA or GCA— whether the possession is of the AR-556 or other short-barreled rifles. Instead, this case is fundamentally a dispute between an estate of a woman who was murdered and a private company, concerning the company's production, marketing, and distribution of the gun used to kill the decedent.

Second, the Supreme Court has stated that, in assessing whether a claim has the "sort of significance for the federal system" that confers federal-question jurisdiction, the lack of a remedy under the relevant federal statute "is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial'". *Merrell Dow*, 478 U.S. at 814 (finding no federal jurisdiction for negligence claims based on mislabeling in violation of the Federal Food Drug and Cosmetic Act). *Grable* confirmed that the lack of a private right of action, though not dispositive, is "relevant" to an inquiry into federal-question jurisdiction. *Grable*, 545 U.S. at 318 ("The [*Merrell Dow*] Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat.").

Here too, there is a "missing welcome mat" into federal court because the NFA and GCA lack a private right of action. This Court should follow the lead of other courts that have found this absence to be important in determining that state-law claims citing violations of the GCA do not raise federal questions fit to be heard in federal court and should be remanded the back to state court. *See Tisdale v. Pagourtzis*, No. 3:20-CV-140, 2020 WL 7170491, at \*4, \*6 (S.D. Tex. Dec. 7, 2020) (finding no *Grable* substantiality for plaintiffs' state law tort claims that necessarily raised a disputed question of defendants' compliance with the GCA, emphasizing that the GCA "does not create a private right of action," and stating that "the plaintiffs' allegations here are among the 'garden-variety tort claims' that are simply unimportant to the federal system as a whole." (citation omitted)); *Corporan*, 194 F. Supp. 3d at 1133 ("The Gun Control Act referenced by plaintiffs in their petition does not create a private, federal cause of action and the petition reveals a fact-bound, private dispute between parties with no direct interest by the United States."); *Jefferson v. Rossi*, No. 01-CV-2536, 2002 WL 32154285, at \*4 (E.D. Pa. Jan. 22, 2002) (finding that even if violations of the Gun Control Act were essential elements of some of Plaintiffs' tort claims, the case did not present a federal question for the purposes of removal jurisdiction because the GCA did not have a private right of action).

Finally, the fact that Plaintiff's tort claims refer to the NFA and the GCA for a standard of conduct does not automatically confer federal jurisdiction. In fact, state courts commonly adjudicate negligence per se claims that allege a violation of the federal firearms laws. *Williams ex rel. Raymond v. Wal-Mart Stores E., L.P.*, 99 So. 3d 112, 116 (Miss. 2012); *Franco v. Bunyard*, 261 Ark. 144, 145–47 (Ark. 1977) (en banc); *Martin v. Schroeder*, 209 Ariz. 531, 537 (Ariz. Ct. App. 2005); *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 844 (Tex. Ct. App. 1989); *West v. Mache of Cochran, Inc.*, 187 Ga. App. 365, 368 (Ga. Ct. App. 1988); *K-Mart Enters. of*

*Fla., Inc. v. Keller*, 439 So. 2d 283, 285 (Fla. Dist. Ct. App. 1983); *see also Kalina v. Kmart Corp.*, No. CV-90-269920 S, 1993 WL 307630, at *7 (Conn. Super. Ct. Aug. 5, 1993) (denying summary judgment and stating that claim alleging violation of the Gun Control Act is actionable under theory of statutory negligence). Likewise, Connecticut courts are equipped to hear CUTPA claims predicated on violations of federal law. *See, e.g.*, *Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 773, 797 (Conn. 2019) (reversing lower court dismissal of CUPTA claim based on violation of federal Real Estate Settlement Procedures Act). This case is no different, and its proper place is in state court.

### B. Exercising Federal Jurisdiction Would Disrupt The Federal-State Balance.

Even if Ruger could satisfy the third *Grable* factor—which it cannot, especially given that factual and not legal issues are the central questions to be litigated here—it cannot satisfy the fourth one. Under that fourth factor, a federal court cannot "entertain" the Plaintiff's claims against Ruger in this action "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *See Gunn*, 568 U.S. at 258 (2013). "Where state legal claims implicate federal issues, '[f]ederal courts should await a clear signal from Congress before treating such auxiliary claims as 'arising under' the laws of the United States.'" *Cutillo v. Wellmore Behav. Health*, No. 3:15-CV-01174 (VAB), 2016 WL 3976543, at *6 (D. Conn. July 22, 2016) (quoting *Empire Healthchoice*, 547 U.S. at 683, 701).

That Plaintiff's state law claims incorporate alleged violations of federal law does not, standing alone, tip the federal-state balance toward federal jurisdiction. "The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings. . . . A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus [] herald[] a potentially enormous shift of traditionally state cases into federal courts." *Grable*, 545 U.S. at 318–19 (citations omitted); *see also Corporan*,

194 F. Supp. 3d at 1132 (stating that state-law negligence claims "in which a violation of a federal statute is asserted merely as an element of a negligence per se theory" are "unmistakably" the type that "belong[] in state court so as not to 'materially affect, or threaten to affect, the normal currents of litigation.'"). Keeping this case, with its state-law negligence claims, in federal court threatens that federal-state balance.

Ruger is wrong that a federal forum is "vital to uniform resolution" of the NFA and GCA issues. Notice ¶ 18. Federal courts around the country frequently remand cases involving federal firearms regulation back to state court. *See Roberts v. Smith & Wesson Brands, Inc.*, No. 22-CV-6169, 2023 WL 6213654  (N.D. Ill. Sept. 25, 2023) (granting remand on case featuring a theory that gun company manufactured weapons in violation of the NFA), *appeal docketed*, No. 23-2992 (7th Cir. Oct. 17, 2023); *Tisdale*, 2020 WL 7170491, at *1 (granting remand on a case with a necessarily raised federal question concerning the Gun Control Act on the basis that the question was not "substantial" enough to the federal system); *Corporan*, 194 F. Supp. 3d at 1132; *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 470 (E.D. Pa. 2016) (granting remand and noting numerous fact-specific considerations in deciding whether Gun Control Act had been violated). Deciding issues of duty, breach, causation, and damages are "issue[s] squarely within the purview of state courts." *Mihok*, 119 F. Supp. 3d at 31. This Court should follow the lead of other federal courts and remand Plaintiff's case back to state court.

### C.    The *Fleet Farm* and *Arm or Ally* Cases Do Not Support Removal Here.

Defendant highlights two decisions in the firearms context—*Minnesota v. Fleet Farm LLC*, ---F. Supp. 3d ---, No. CV 22-2694 (JRT/JFD), 2023 WL 4203088, at *7 (D. Minn. June 27, 2023), and *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70 (S.D.N.Y. 2022)—in support of its removal petition. Both are distinguishable, and both are contrary to the weight of authority cited above.

*Arm or Ally* is a wide-ranging litigation against 10 different defendants who manufacture and sell unfinished firearm frames and receivers used to build so-called "ghost guns," in which the plaintiff was the state of New York seeking broad prospective injunctive relief. *Id.* at 73. This case, by contrast, involves only a single manufacturer sued by a private plaintiff concerning a firearm the manufacturer has discontinued (Am. Compl. ¶ 55) and seeks only backward-looking damages for past conduct. Critically, the *Arm or Ally* court concluded that—as in *Grable*—the "meaning of the federal statute" (545 U.S. at 315, quoted at 644 F. Supp. 3d at 77) was centrally at issue— specifically, "defining" the Gun Control Act's use of the terms "firearm" and "component part." 644 F. Supp. 3d at 78–80. As the Court wrote, "defining the terms 'firearm' and 'component part' is plainly a substantial issue," and the plaintiff apparently conceded the point in that case, "not even attempt[ing] to argue otherwise." *Id.* at 79. Here, by contrast, a fact-finder's decision as to whether the now-discontinued AR-556 Pistol meets the five key requirements under federal law for a short-barreled rifle—including its size, construction, and whether the weapon was "designed or redesigned, made or remade, and intended to be fired from the shoulder" (26 US.C. §§ 5845(a)(3)–(4), (c); 18 U.S.C. § 921(a)(7)–(8)) —will not "'have sweeping consequences" for the federal government's powers to regulate or prosecute the manufacture, sale, or possession of these or other weapons. *See supra* at Part III(A)(2). Additionally, the *Arm or Ally* court's decision to uphold removal was reinforced by the facts that (a) the United States had filed a "Statement of Interest" in a parallel companion case, reinforcing the substantial federal interest (644 F. Supp. 3d at 80), and (b) the state law at the heart of the case had "incorporate[d] a federal definition" from the Gun Control Act and thus had "piggyback[ed] on federal law" (*id.* at 83). Neither is the case here.

As for *Fleet Farm*, that litigation centered on licensed federal firearms retailers violating federal law by selling firearms to straw purchasers (i.e., a person knowingly purchasing a firearm at the request of someone else who typically is not eligible to possess the firearm). *Id.* at *2–3. The court found a substantial federal issue because "[t]he resolution of this case is likely to have a substantial impact on how future firearm retailers—in and out of Minnesota—act in similar circumstances." *Id.* at *1, *7.  While the *Fleet Farm* court acknowledged that a substantial federal issue needs to be "a nearly pure issue of law," *id.* at *7, the court failed to analyze whether the issues in Fleet Farm met that standard (other than to repeatedly note that Fleet Farm's alleged "duties [as a licensed gun seller] are largely established at the federal level"). *Id. Fleet Farm* is thus both (a) distinguishable from the case at bar in its unexplained (and likely erroneous) assumption that the case presented a "nearly pure issue of law" that would broadly impact behavior of federally licensed gun dealers going forward (neither of which, in any event, is true here) and (b) contrary to the larger body of better-reasoned decisions cited above holding that state court is the proper place for cases—like this one—where traditional state law claims are predicated on federal gun law violations.  *See* supra at Parts III(A)(2), (B).

## CONCLUSION

For the reasons outlined above, Plaintiff respectfully requests that the Court remand this matter pursuant to 28 U.S.C. § 1447.

NATHANIEL GETZ, EXECUTOR OF THE
ESTATE OF SUZANNE FOUNTAIN


By: */s/ Andrew B. Ranks* _____
    Andrew B. Ranks, Esq. [ct28751]
    Connecticut Trial Firm, LLC
    437 Naubuc Avenue, Suite 107
    Glastonbury, CT 06033
    Tel: (860) 471-8333
    Fax: (860) 471-8332

    Eric Tirschwell* [ct25626]
    Everytown Law
    450 Lexington Ave
    PO Box 4184
    New York, NY. 10017
    etirschwell@everytown.org
    *admitted pro hac vice, appearance
    forthcoming

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was served electronically on the above captioned date and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail at the addresses shown below to anyone unable to accept electronic filing as indicated by the Notice of Electronic Filing. Parties may access filing through the Court's CM/ECF System.

Robert Carl Eric Laney
Ryan Ryan Deluca LLP
1000 Lafayette Boulevard, Suite 800
Bridgeport, CT. 06604
roblaney@ryandelucaw.com

James Vogts
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, Illinois 60611
jvogts@smbtrials.com